AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.  8:26MJ165
)
A black Google Smartphone with a black case (herein after referred to as the DEVICE) )
which was seized from Philip Ausherman )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ Nebraska _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy associated with controlled substances. |
| 21 U.S.C. § 841(a)(1) | Possession and distribution of controlled substances. |

The application is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Thane Palmer, SA with FBI
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date:  4/22/2026
_____
*Judge's signature*

City and state:  Omaha, Nebraska

Ryan C. Carson, U.S. Magistrate Judge
*Printed name and title*

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Thane Palmer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following authorizing the examination of property—electronic devices— (as described in Attachment A), which are currently in law enforcement possession, and the extraction from that property of electronically stored information, by the means described in Attachment B.

2.    I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I am a Special Agent with the Federal Bureau of Investigation and have been since January 2020. I attended New Agent training at the FBI Academy in Quantico, Virginia. In conducting my official duties, I have authored affidavits in support of search warrants and criminal complaints. I have participated in controlled substance investigations of alleged criminal violations of the Controlled Substances Act laws. I have participated in investigations involving the purchase of controlled substances from suspected narcotics traffickers using confidential sources. I have participated in the execution of search warrants for controlled substances, the proceeds, and documentary evidence of drug trafficking. I have conducted surveillance in connection with drug investigations. Through the course of these investigations, I have personally interviewed confidential sources and persons arrested for the distribution of illegal drugs.  My training and experience as a Special Agent, my participation in the investigation of drug trafficking organizations, my conversations with known drug

traffickers, and my conversations with other law enforcement officials familiar with drug trafficking and money laundering, form the basis of my opinions and conclusions set forth below which I drew from the facts set forth herein. I am familiar with drug traffickers' methods of operation including the distribution, storage, and transportation of controlled substances and the collection of monetary proceeds of drug trafficking and methods of money laundering used to conceal the nature of the proceeds. I have conducted investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with controlled substances, in violation of Title 21, United States Code, §§ 846 and 841(a)(1).

3.      In addition, based on my knowledge, training and experience, and that of other law enforcement officers familiar with the case, drug traffickers often utilize digital cellular telephones to contact their associates, sources of supply (SOS) and their customers. A laptop, tablet or a digital cellular telephone or "Smartphone" (a smart phone is a digital cellular telephone with the added abilities to browse the world wide web, send and receive e-mail and digital media such as pictures and video files, and send MMS or "text" messages) is a portable electronic device that may be transported from one place to another and remain operational through the use of a portable battery pack or alternate source. These digital devices are capable of sending and receiving wire communications, operate as a digital paging and voice mail device, send and receive MMS or "text" messaging, browse the internet, take video movies, still pictures, and voice notes, and allow e-mail to be sent and received. Laptops, tables, cellular telephones and or "Smart phones" contain "address books" or a series of stored telephone numbers which are associated with names either given or nicknames that are assigned by the user of the phone.

Digital cellular telephones are not party lines, and each telephone has an assigned telephone number, which may be changed, much the same way as a regular residential telephone. Calls can be made to, or received from a regular telephone, other cellular phones, paging devices, or other facility that can be contacted by a conventional telephone. Digital devices permit drug traffickers to remain in constant communication with one another via voice, text messaging and e-mail. Your affiant knows that drug traffickers often have stored in their laptops, tablets and phones: (1) the telephone numbers and digital display codes used by accomplices, aiders and abettors, co-conspirators and participants in these illegal activities; (2) the identities of co-conspirators, customers, and criminal associates based upon subscriber information derived from the retrieved phone numbers and names associated with them; (3) stored text and e-mail messages identifying possible co-conspirators or identifying or discussing certain drug transactions; (4) stored digital images and movies, depicting evidence and fruits of the above listed crime; (5) Finally, based on my experience drug traffickers communicate to suppliers and/or customers via cellular telephone(s). Drug traffickers often have multiple telephones and/or change their telephone numbers routinely. Drug traffickers also utilize internet-based applications to communicate in order to avoid law enforcement detection as these applications can be used on telephonic devices but are not revealed in toll records and/or wire intercepts. However, these applications are housed on their cellular telephones.

4.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and from personal participation or has been provided to me by law enforcement officers that are familiar with all aspects of this investigation as a result of their personal participation, reports made known to them by other Special Agents of the FBI and other state and local law enforcement personnel, and their

experience and background as a Special Agent with the FBI or law enforcement officer.  This affidavit contains information necessary to support probable cause and is not intended to include each and every fact and matter observed by and/or known to the government.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.    The property to be searched is as follows:

a.  A black Google Smartphone with a black case (herein after referred to as the DEVICE) which was seized from Philip Ausherman.

6.    The applied-for warrant would authorize the forensic examination of the DEVICE for the purpose of identifying electronically stored data, as described in Attachment A, through means particularly described in Attachment B.

## FACTS SUPPORTING PROBABLE CAUSE

7.    The DEVICE is currently in the lawful possession of the FBI at the Omaha Field Office located at 4411 S 121st Ct., Omaha NE 68137.  The DEVICE came into law enforcement's possession in the following way: On January 29th, 2025, Deputies with the Douglas County Sheriff's Office (DCSO) conducted a traffic stop and subsequent narcotics investigation on a Dark Blue 2013 Honda Accord, driven by Philip Ausherman (AUSHERMAN). During the traffic stop and subsequent investigation, Deputies developed probable cause to search the vehicle. The search of the vehicle resulted in the location and seizure of approximately 11 grams of methamphetamine, narcotic paraphernalia and the DEVICE.

## PROBABLE CAUSE

8.      On or about January 29th, 2025, DCSO Deputy Crawford observed a Dark Blue 2013 Honda Accord bearing Nebraska license plate YKA329, commit a traffic violation. Deputy Crawford conducted a traffic stop of the vehicle and identified the driver and sole occupant of the vehicle as Philip Ausherman. During the stop, a Ralston Police Department K9 Officer arrived to assist and deployed his narcotics detection K9. The K9 alerted and indicated to the odor of narcotics in the vehicle.

9.      A search of the vehicle was conducted and revealed approximately 11 grams of methamphetamine, narcotic paraphernalia and the DEVICE. Deputies asked AUSHERMAN if he would be willing to speak with them about the narcotics. AUSHERMAN agreed and was transported to the Douglas County Special Operations Group Office for an interview.

10.      Upon arriving, AUSHERMAN was un-cuffed and placed in an interview room. DCSO Deputy Daniel Eads advised AUSHERMAN of his Miranda Rights via a Douglas County Rights Advisory Form. AUSHERMAN confirmed his willingness to speak to Deputies and signed the Rights Advisory form. Deputies Eads and Crawford proceeded to interview AUSHERMAN.

11.      During the interview, AUSHERMAN told Deputies that he had been in contact with a source of supply of methamphetamine named "Mike Guzman" for over a year. AUSHERMAN would utilize WhatsApp or Telegram to communicate with Guzman. AUSHERMAN knew that Guzman was working on behalf of the Sinaloa Cartel. Over the past six months, AUSHERMAN and his girlfriend, Tiffany Bucci, had been getting between half a pound to a pound of methamphetamine three times a week from Guzman. AUSHERMAN would

contact Guzman and order the methamphetamine, Guzman would then send a courier to a predetermined location to deliver the methamphetamine. Guzman would charge approximately $2,500.00 per a pound of methamphetamine. On some occasions, AUSHERMAN would go with Bucci to pick up the methamphetamine, but both had gone solo to pickup on other occasions.

12.     During the interview, AUSHERMAN gave Deputies permission to look through his phone, the DEVICE. Deputy Eads reviewed the DEVICE and found WhatsApp messages with a "Mike(that Mike)" with an associated number of +528117642496. From prior investigation, Deputies Eads recognized the number as the phone number of a know Mexico based SOS of methamphetamine that was being investigated by the FBI. During the interview Deputy Eads showed AUSHERMAN multiple pictures of know drug couriers that were associated with the FBI investigation. AUSHERMAN identified all three individuals as "runners" who have delivered methamphetamine to him and Bucci over the past year after ordering it from Guzman.

13.     Following the interview, the DEVICE was placed into DCSO evidence. On April 13, 2026, FBI Special Agent Palmer took custody of the DEVICE and transported it to the FBI Omaha Field Office located at 4411 S 121st Ct., Omaha NE 68137.

14.     On April 14, 2026, a Federal search warrant (8:26MJ156) for the DEVICE was obtained in the District of Nebraska. An attempt to download and extract the contents of the DEVICE was made, but due to not having the security passcode to open the device, only a partial download was obtained. This partial download did not include any messages, chats, call logs or contacts from the DEVICE.

15.     On April 22, 2026, SA Palmer spoke with Jennifer Ausherman, who is the wife of AUSHERMAN. Jennifer provided SA Palmer with the passcode to her husband's phone as 2533.

Due to obtaining this passcode and out of an abundance of caution, a new search warrant is requested to research the DEVICE.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

17.     Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

e. Nature of Examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

f. Manner of Execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **Conclusion**

16.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE as described in Attachment A to seek the items described in Attachment B.

_____

Special Agent Thane Palmer

Federal Bureau of Investigation

Sworn to before me by telephone or other reliable electronic means:

Date:  April 22, 2026

City and State: Omaha, Nebraska

_____

Ryan C. Carson, U.S. Magistrate Judge

**ATTACHMENT A**

**Item to be searched:**

The following item referred to as the "**DEVICE**":

- A black Google Smartphone with a black case (herein after referred to as the DEVICE) which was seized from Philip Ausherman.

The **DEVICE** shall be searched according to the protocol listed on Attachment B for the following items:

(1) all text messages, emails, other electronic communications or images related to the distribution/delivery of drugs or packages containing drugs, including all electronic communications related to the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions in furtherance thereof;

(2) any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

(3) all bank records, checks, credit card bills, account information, and other financial records;

(4) information reflecting the location of the phone or digital device.

The **DEVICE** shall also be searched for evidence of user attribution showing who used or owned the **DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

Front and Back Photos of the DEVICE:

 

**ATTACHMENT B**

**Search Protocols**

1. This warrant authorizes the search of electronically stored information and other documents related to the items listed on Attachment A. Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

2. While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol:

3. With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which probable cause exists.

4. The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

a. Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c. Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

d. Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>A black Google Smartphone with a black case (herein after referred to as the DEVICE) which was seized from Philip Ausherman | )<br>)<br>)<br>)    Case No.    8:26MJ165<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Nebraska _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ April 29, 2026 _____    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Ryan C. Carson _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    4/22/2026 5:40 pm _____

_____
*Judge's signature*

City and state:    Omaha, Nebraska _____    Ryan C. Carson, U.S. Magistrate Judge
_____
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>    8:26MJ165 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:    _____


_____
*Executing officer's signature*


_____
*Printed name and title*

**ATTACHMENT A**

**Item to be searched:**

The following item referred to as the "**DEVICE**":

- A black Google Smartphone with a black case (herein after referred to as the DEVICE) which was seized from Philip Ausherman.

The **DEVICE** shall be searched according to the protocol listed on Attachment B for the following items:

(1) all text messages, emails, other electronic communications or images related to the distribution/delivery of drugs or packages containing drugs, including all electronic communications related to the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions in furtherance thereof;

(2) any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

(3) all bank records, checks, credit card bills, account information, and other financial records;

(4) information reflecting the location of the phone or digital device.

The **DEVICE** shall also be searched for evidence of user attribution showing who used or owned the **DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

Front and Back Photos of the DEVICE:

 

**ATTACHMENT B**

**Search Protocols**

1. This warrant authorizes the search of electronically stored information and other documents related to the items listed on Attachment A. Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

2. While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol:

3. With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which probable cause exists.

4. The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

a. Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c. Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

d. Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.